IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

STACY PAUL BRYANT                                                                                  PLAINTIFF

       v.                              Civil No. 6:07-cv-06031

LARRY SANDERS, Sheriff, Garland
County, Arkansas; MEL STEED, Captain,
Garland County Detention Center; CPL.
CHRIS HOAR, Place of Employment Unknown;
DAVID AVANT, Deputy, Garland County
Detention Center; DEWAYNE HORNER,
Deputy, Garland County Detention Center;
DEPUTY HEDRICK (#308), Garland County
Detention Center; SCOTT KELSNUNER,
Deputy, Garland County Detention Center;
DEPUTY SHIRLEY, Garland County Detention
Center; DR. KEVIN HALE; NURSE TOMMY
HARMON, Garland County Detention Center                                    DEFENDANTS

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

Plaintiff, Stacy Paul Bryant (hereinafter "Plaintiff" or "Bryant"), filed this action pursuant to 42 U.S.C. § 1983. He proceeds *pro se* and *in forma pauperis*. Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3)(2007), the Honorable Jimm Larry Hendren, United States District Judge, referred this case to the undersigned for the purpose of making a report and recommendation.

Bryant is currently incarcerated in the Southwest Arkansas Community Correctional Facility located in Texarkana, Arkansas. He contends his constitutional rights were violated while he was incarcerated at the Garland County Detention Facility. Specifically, he contends he was denied adequate medical care.

Defendants filed a motion for summary judgment (Doc. 22). To assist Bryant in responding to the motion for summary judgment, I propounded a questionnaire (Doc. 25). Bryant filed a timely response to the questionnaire (Doc. 26) and the motion is now ready for decision.

### I. Background

Bryant was booked into the Garland County Detention Facility (GCDF) on March 21, 2006. *Response* (Doc. 26)(hereinafter *Resp.*) at ¶ 1. He was being held on charges of contempt, failure to pay fines, violating the terms and conditions of probation, failure to appear, theft of property, and failure to comply with a court order. *Id.* at ¶ 2. The pending charges were the sole reason he was incarcerated. *Id.* at ¶ 3. He remained incarcerated at the GCDF until June 15, 2006, when he was released on bond. *Id.* at ¶ 4.

Captain Mel Steed is the jail administrator at the GCDF. *Resp.* at ¶ 5. Larry Sanders was during all times relevant to Bryant's complaint the duly elected Sheriff of Garland County, Arkansas. *Id.* at ¶ 6. Chris Hoar, David Avant, DeWayne Horner, Deputy Hedrick, Scott Kelsmumer, Scott Shirley, and Tommy Harmon were at all times relevant to Bryant's complaint employees of the GCDF. *Id.* at ¶ 7.

Dr. Kevin Hale is a medical doctor with a private practice located in Hot Springs, Arkansas. *Resp.* at ¶ 8. He is not an employee of Garland County. *Id.* at ¶ 9. Dr. Hale entered into an agreement to visit inmates in the custody of the GCDF who are in need of medical treatment. *Defendants' Exhibit* 1 (hereinafter *Defts' Ex.*) at ¶ 7. He is paid on a per patient basis. *Id.* According to Defendants, Dr. Hale normally sees inmates at the GCDF at least once a week. *Defts' Ex.* 1 at ¶ 8. Bryant, however, maintains there are times when Dr. Hale does not show up for weeks or even months. *Resp.* at ¶ 11.

Garland County has a policy that requires the provision of medical care to inmates. *Resp.* at ¶ 12(A). In the case of an inmate who needs non-emergency medical care, the inmate is directed to complete a medical request form which is reviewed by a supervisor and then forwarded to the

nurse or Dr. Hale for review. *Defts' Ex.* 1 at ¶ 8. If the inmate needs to see the doctor, the inmate is scheduled an appointment with Dr. Hale at his regular visit. *Id.*

According to Defendants, in emergency medical situations, inmates are either transported to the emergency room or an ambulance is summoned to provide emergency medical care to inmates. *Defts' Ex.* 1 at ¶ 8. Bryant maintains the only situations personnel at the GCDF recognize as emergencies are uncontrollable bleeding or not breathing. *Resp.* at ¶ 12(C). He maintains GCDF personnel have told inmates this. *Id.*

The first medical complaint from Bryant contained in Defendants' records is dated April 9th. *Defts' Ex.* B at page 2. In the medical complaint Bryant states he would like to see Nurse Harmon so that he could get an appointment with Dr. Hale. *Id.* Bryant indicates this is the seventh medical complaint he had written. *Id.* Bryant cannot recall the dates on which he wrote the other complaints. *Resp.* at ¶ 15(B). However, he states he always received the same response; he was told by the deputy that it was turned in to the nurse and it was up to the nurse to ask to see him. *Id.* Bryant states he did not see the nurse until April 9th. He does not have copies of any of the other medical complaints. *Id.* Bryant indicates he received no treatment from the nurse on April 9th. *Id.* at ¶ 15(C).

Bryant submitted a grievance on April 20th. *Resp.* at ¶ 15(D). He stated he had sent four medical complaints and two "kites" to the nurse and one kite to Deputy Griness. *Id.* He stated he had not heard from or seen the nurse. *Id.* In the grievance, Bryant stated he had "TMJ" and it was causing him severe pain in his jaw. *Resp.* at ¶ 15(E). He indicated he also had two fused vertebrae in his neck that caused him neck pain and headaches. *Id.* He stated he had told the nurse about his feet having sore spots on them because of his flat feet and that he requested to see the doctor. *Id.* Bryant indicates when he finally saw Nurse Harmon he had blood blisters on his feet. *Resp.* at ¶ 15(F). When Bryant showed his feet to Nurse Harmon, the nurse sprayed "them with something." *Id.*

In response to the April 20th grievance, Nurse Harmon wrote that Dr. Hale was not going to be there that week. *Resp.* at ¶ 15(G). Nurse Harmon stated there was nothing they could do about Bryant's flat feet. *Id.* Nurse Harmon stated there were no shoes allowed–sandals only. *Id.* Nurse Harmon stated if Bryant wanted Tylenol or Ibuprofen he could arrange that for him. *Id.* Nurse Harmon stated the rest would be up to Dr. Hale. *Id.*

Bryant submitted a medical complaint on April 24th. *Resp.* at ¶ 16(A). He stated he would like to see Nurse Harmon so he could make an appointment to see Dr. Hale. *Id.* In response, Nurse Harmon noted Bryant was having an anxiety attack. *Id.* at ¶ 16(B). Nurse Harmon also noted that both Bryant's feet were dry and scaly. *Id.* Bryant indicates he actually had blood blisters on his feet. *Id.* Bryant was prescribed Elavil "as per fax" by Dr. Hale. *Resp.* at ¶ 16(C). He began receiving the Elavil on April 24th. *Id.* at ¶ 16(D). Nurse Harmon also sprayed Bryant's feet "with something." *Id.* at ¶ 16(F).

Bryant also submitted a grievance on April 24th. *Resp.* at ¶ 16(F). He said he had submitted multiple "kites" to the nurse about his "TMJ," not sleeping at night, his anxiety attacks, and the sores on his feet. *Id.* Prior to his arrest, Bryant indicated he was seen at the emergency room because of those problems. *Id.* He indicated he was told not to wear his boots. *Id.* Instead, he was told to wear his tennis shoes. *Id.* He stated he understood that there are no shoes but he had seen people with shoes on that didn't have his problems. *Id.* He asked to see the doctor to resolve this issue. *Id.* In response, Nurse Harmon wrote there was no need to see Dr. Hale about shoes. *Resp.* at ¶ 16(G). Nurse Harmon noted it was a safety hazard and that Dr. Hale would not issue an order for shoes because the policy of the detention center was no shoes. *Id.*

Bryant was seen by Dr. Hale on May 12th. *Defts' Ex.* C at page 1. Bryant indicated he needed something for pain in his head and neck. *Id.* Dr. Hale diagnosed Bryant with pain in the TMJ (temporomandibular joint) and anxiety. *Resp.* at ¶ 17(B). Dr. Hale prescribed Ultram and Vistaril. *Id.* Bryant received the prescribed medication. *Id.* at ¶ 17(C).

On May 16th Bryant submitted a medical complaint asking for a refill on his sleeping medication. *Resp.* at ¶ 18(A). He also stated he needed his feet to be "sprayed again with that spray." *Id.* In response on May 17th, Nurse Harmon wrote that the Elavil was a "no-refill" prescription and they did not have a go ahead to give it. *Id.* at ¶ 18(B).

On May 16th, Bryant submitted a second medical request. *Resp.* at ¶ 19(A). He stated that he was in severe pain in his back from his neck to his tail bone. *Id.* He also stated he had not urinated in two days. *Id.* He stated when he tried to urinate blood came out. *Id.* He stated he was hurting so bad he would like to go to the hospital. *Id.*

On May 18th, Nurse Harmon wrote: "Dr. Hale with orders." *Resp.* at ¶ 19(B). On May 18th Bryant was seen by Dr. Hale and put on "force fluids." *Id.* at ¶ 20(B). At 1:00 p.m., he was started on the antibiotic Cipro, and given Pyridium a medication to relieve urinary tract pain, burning, irritation and discomfort, and Toradol for pain relief. *Id.* at ¶ 20(C).

Late on May 18th, but not turned in until May 19th, Bryant wrote a grievance about his medical care. *Resp.* at ¶ 20(D) & ¶ 20(L) (The grievance is dated May 18th at the top of the form and May 19th at the bottom of the form). Bryant stated that the nurse told him to wait until 9:00 p.m. to see if there were any changes. *Id.* at ¶ 20(D). Bryant indicated there were different deputies working at 9:00 p.m. and he was told that the nurse said to wait until the morning of the 19th. *Id.* He stated he still had not urinated. *Id.* at ¶ 20(E). He asserted that the nurse and deputies were going against medical advice in not taking him to the emergency room. *Id.* He stated that when he was released he planned on filling out a section 1983 form. *Id.* He also stated he did not sleep at night because of pain in his abdominal area and lower back. *Resp.* at ¶ 20(F). He stated he had blood that came from his penis. *Id.* at ¶ 20(G). He indicated he believed this constituted an emergency but he stated it did not to the staff. *Id.* He stated he did as he was told and completed medical complaint forms. *Id.*

According to Bryant, after lunch on the 18th he was seen by Dr. Hale and started on antibiotics. *Resp.* at ¶ 20(H). Bryant maintains Dr. Hale said if he did not urinate by 4:30 p.m. he was to be taken to the hospital. *Id.* Bryant states 4:30 p.m. came and went and he was not taken to the hospital. *Id.* At 4:30 p.m., Bryant was called up and seen by Nurse Harmon. *Id.* at ¶ 20(I).

On May 19th, Nurse Harmon responded to the grievance stating that Dr. Hale left it up to nursing discretion whether Bryant should be taken to the hospital at 4:30 p.m. and that was if there were no improvements. *Resp.* at ¶ 20(J). Nurse Harmon stated Bryant should let the antibiotic get in his system. *Id.* Nurse Harmon stated Bryant was getting the same treatment he would get in the hospital. *Id.* Nurse Harmon also indicated he had talked to Bryant's sister who was a nurse and she couldn't think of anything different to do for Bryant than what they were doing. *Defts' Ex.* F at page 6. Nurse Harmon noted that Bryant's sister had called his Dad. *Id.* Bryant, however, states his sister is not a nurse and would not know what the treatment was for the problems he had. *Resp.* at ¶ 20(K).

According to Defendants' records, on May 19th, Nurse Harmon saw Bryant in his office and he noted "kidney moving" and that Bryant in good spirits. *Defts' Ex.* C at page 2. Bryant, however, asserts he was not seen by Nurse Harmon on May 19th. *Resp.* at ¶ 21.

On May 25th Bryant submitted a medical complaint. *Resp.* at ¶ 22(A). He stated he needed refills on his Elavil, Vistaril, and Toradol. *Id.* He stated he was having trouble sleeping again and did not want to start hurting again. *Id.* He stated he had thirty days left until he went home. *Id.*

Nurse Harmon responded on May 26th. *Resp.* at ¶ 22(B). He stated he was not refilling Bryant's medication. *Id.* He stated Bryant did not need to depend on those medications. *Id.* He stated Bryant came through the kidney problem. *Id.* Bryant received all medication prescribed to him by Dr. Hale. *Resp.* at ¶ 23. He began receiving prescription medications on April 24, 2006, and continued to receive medications during his entire incarceration, as needed, until May 27th. *Id.* at ¶ 24.

Dr. Hale did not order any type of surgical treatment or any type of referral to another doctor.

*Resp.* at ¶ 25. Each time Bryant was seen by Dr. Hale he evaluated Bryant's condition and prescribed medication he believed in the exercise of his medical judgment was appropriate. *Id.* at ¶ 29. Bryant believes Dr. Hale exhibited deliberate indifference to his serious medical needs because he "knew how [Bryant] was being treated and did nothing to help the problem. He did not call to see if I was ok or to check on my progress." *Id.* at ¶ 30.

Bryant contends Nurse Harmon failed to carry out Dr. Hale's orders when he failed to take Bryant to the hospital to be catheterized when Bryant had not urinated by 4:30 p.m. on May 18th. *Resp.* at ¶ 26. Bryant maintains this failure on Nurse Harmon's part to have him taken to the emergency room constitutes deliberate indifference on Nurse Harmon's part and caused him to spend an entire weekend suffering. *Id.* at ¶ 32 & ¶ 35.

Bryant maintains he is still having problems with blood in his urine on an off and on basis. *Resp.* at ¶ 33. He states his kidneys quit working, he was unable to urinate, he had back pain, and was unable to sleep. *Id.* After his release, he was seen at the emergency room and catheterized. *Id.* He indicates blood and urine was removed from his bladder. *Id.* He indicates he has been seen by the doctor at the facility he is currently incarcerated at for the same problem. *Id.*

Bryant never spoke to, or communicated with Sheriff Sanders about his need for medical care until after his release. *Resp.* at ¶ 36. After his release, he mailed Sheriff Sanders a letter. *Id.*

With respect to Captain Steed, Bryant states he is supposed to get the grievance forms. *Resp.* at ¶ 37. Therefore, when Steed received Bryant's grievances, Bryant believes he should have done something. *Id.*

With respect to Corporal Chris Hoar, Deputy David Avant, Deputy Dewayne Horner, Deputy Hedrick, Deputy Scott Kelsnuner, and Deputy Shirley, Bryant indicates he turned in kites to them and also told them about his problems. *Resp.* at ¶ 38, ¶ 39, ¶ 40, ¶ 41, ¶ 42, ¶ 43. Bryant indicates they ignored the situation. *Id.*

## II. Summary Judgment Standard

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986), the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *National Bank of Commerce v. Dow Chemical Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *National Bank*, 165 F.3d at 607 (*citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (*citing Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)).

## III. Arguments of the Parties

Defendants have now moved for summary judgment. Defendants, maintain there is no evidence that any Defendants were deliberately indifferent to Bryant's serious medical needs. Defendants point out that Bryant was seen by Nurse Harmon and Dr. Hale, prescribed medication, and received the prescribed medication. With respect to the remaining Defendants, they maintain they were not personally involved in the provision of medical care.

In opposition, Bryant argues Dr. Hale failed to make sure his orders were carried out. Bryant also argues that Nurse Harmon failed to follow the doctor's orders and have him taken to the hospital for his urinary tract or kidney/bladder infection and didn't provide him with prompt medical care in response to his requests. With respect to the remaining Defendants, Bryant maintains he told them

about his problems and turned in grievances or kites to them and they should have done something about his problems.

### IV. Discussion

"[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *County of Sacramento v. Lewis*, 523 U.S. 833, 118 S. Ct. 1708, 1719, 140 L. Ed. 2d 1043 (1998)(citation omitted). "Deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment as applied to the States by the Fourteenth Amendment." *Hartsfield v. Colburn*, 491 F.3d 394, 396 (8th Cir. 2007). In this circuit it is now settled law that deliberate indifference is the appropriate standard of culpability for claims that detention center officials have denied inmates adequate medical care. *See Butler v. Fletcher*, 465 F.3d 340, 344 (8th Cir. 2006). This standard applies to all inmates, whether in pretrial or convicted status. *See id.*

"In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976). The deliberate indifference standard includes "both an objective and a subjective component: 'The [plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000)(*quoting Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997)). Additionally, "'[t]he prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation.'" *Jolly*, 205 F.3d at 1096 (*quoting Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir.1995)). *See also Gregoire v. Class*, 236 F.3d 413, 417 (8th Cir. 2000)("To establish a constitutional violation, it is not enough that a reasonable official should have known of the risk, a plaintiff must establish that the official in question did in fact know of the risk.").

"Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Hudson v. McMillian*, 503 U.S. 1, 9, 112 S. Ct. 995, 1000, 117 L. Ed. 2d 156 (1992). "A medical need is serious if it is obvious to the layperson or supported by medical evidence." *Moore v. Jackson*, 123 F.3d 1082, 1086 (8th Cir. 1997) (per curiam) (internal quotation and citation omitted).

"[T]he failure to treat a medical condition does not constitute punishment within the meaning of the Eighth Amendment unless prison officials knew that the condition created an excessive risk to the inmate's health and then failed to act on that knowledge." *Long v. Nix*, 86 F.3d 761, 765 (8th Cir. 1996). In *Dulany v. Carnahan*, 132 F.3d 1234 (8th Cir. 1997), the Eighth Circuit said:

> As long as this threshold is not crossed, inmates have no constitutional right to receive a particular or requested course of treatment, and prison doctors remain free to exercise their independent medical judgment. Deliberate indifference may be demonstrated by prison guards who intentionally deny or delay access to medical care or intentionally interfere with prescribed treatment, or by prison doctors who fail to respond to prisoner's serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 103, 97 S. Ct. 285, 290, 50 L. Ed. 2d 251 (1976). Mere negligence or medical malpractice, however, are insufficient to rise to a constitutional violation. *Id.* at 106, 97 S. Ct. at 292.

*Dulany*, 132 F.3d at 1239. *See also Tlamka v. Serrell*, 244 F.3d 628, 633 (8th Cir. 2001).

In this case, the first medical request that appears in the record is dated April 9th. *Resp.* at ¶ 15(A). However, Bryant states in this request that it is his "seventh" medical complaint. *Id.* Other than Bryant's bare assertion, he does not support this statement in anyway. He does not indicate the dates on which he allegedly submitted the other complaints, who he turned them into, or provide any other information regarding the complaints.

It is not clear from the record when Bryant was first seen by Nurse Harmon. Bryant at one point states he saw Nurse Harmon on April 9th. *See Resp.* at ¶ 15(B)("I did not see the nurse until

the 9th of April"). However, he then states he was not seen in response to his April 9th medical complaint. *Id.* at ¶ 15(C). He indicates he was seen and his feet were treated but does not give the date of this visit with the nurse. *Id.* at ¶ 15(F). Bryant was prescribed medication for anxiety by Dr. Hale which Bryant began receiving on April 24th. *Id.* at ¶ 16(D).

Bryant was seen by Dr. Hale on May 12th and prescribed Ultram and Vistaril for TMJ pain and anxiety. *Resp.* at ¶ 17(B). Bryant received the prescribed medication. *Id.* at ¶ 16(C).

On May 16th, Bryant submitted a request indicating he was having problems urinating. *Resp.* at ¶ 19(A). On May 18th, Bryant was seen by Dr. Hale and prescribed medication. *Id.* at ¶ 19(B). Bryant began receiving that day an antibiotic, Cipro, a medication to relieve urinary tract pain, Pyridium, and a medication for pain relief, Toradol. *Id.* at ¶ 19(C).

Bryant believed Dr. Hale left orders for him to be taken to the hospital at 4:30 p.m. if he had not urinated by then. *Defts' Ex.* F at page 5. Bryant was seen by Nurse Harmon at 4:30 p.m. *Resp.* at ¶ 20(I). However, Nurse Harmon did not order Bryant to be taken to the hospital. Instead, he told Bryant he needed to let the antibiotic get into his system. *Id.* at ¶ 20(J).

On May 25th, Bryant submitted a medical request asking for refills of his Elavil, Vistaril, and Toradol. *Resp.* at ¶ 22(A). Bryant stated he was having trouble sleeping again and didn't want to start hurting again. *Id.* Nurse Harmon refused his request noting that Bryant did not need to depend on those medications and had come through the kidney problem. *Id.* at ¶ 22(B).

"For a claim of deliberate indifference, the prisoner must show more than negligence, more even that gross negligence, and mere disagreement with treatment decisions does not give rise to the level of a constitutional violation. Deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct." *Popoalii v. Correctional Medical Services*, 512 F.3d

488, 499 (8th Cir. 2008)(internal quotation marks and citations omitted). In this case, Bryant at most suggests Dr. Hale was negligent in not ensuring that his orders were carried out. Negligence is insufficient to state a claim of deliberate indifference. *See e.g., Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995). There is no summary judgment evidence supporting the claim that Dr. Hale was deliberately indifferent to a serious medical need of Bryant's.

With respect to Nurse Harmon, Bryant's main claim is that Nurse Harmon refused to take him to the hospital at 4:30 p.m. on May 18th despite Dr. Hale's orders. The record does not establish that Dr. Hale ordered Nurse Harmon to take Bryant to the hospital at 4:30 if he had not urinated by then. Instead, the record indicates Dr. Hale left the decision up to Nurse Harmon depending on his observation of Bryant at 4:30. Even if Nurse Harmon acted contrary to Dr. Hale's orders, we believe this would establish merely medical malpractice rather than deliberate indifference. As the Eighth Circuit Court of Appeals recently noted, "Medical malpractice alone, however, is not actionable under the Eighth Amendment." *Popoalii*, 512 F.3d at 499 (citation omitted).

Bryant also maintains that Nurse Harmon either ignored his medical complaint forms prior to April 9th or the deputies he submitted them to threw them away. Bryant came into the GCDF on March 21st. *Resp.* at ¶ 1. He cannot recall the dates on which he allegedly submitted the medical complaint forms prior to April 9th. *Id.* at ¶ 15(A). Moreover, he has no idea whether Nurse Harmon ignored the forms or what happened to the forms. This can hardly be said to constitute deliberate indifference on Nurse Harmon's part. Furthermore, Bryant has produced no evidence that a delay in his treatment had an adverse impact on his health. *See e.g., Laughlin v. Schriro*, 430 F.3d 927, 929 (8th Cir. 2005)(when inmate alleges that delay in treatment rise to level of Eighth Amendment

violation, objective seriousness of deprivation should be measured by effect of delay, and to establish this effect inmate must place verifying medical evidence in record).

With respect to Sheriff Larry Sanders, Captain Mel Steed, Corporal Chris Hoar, Deputy David Avant, Deputy Dewayne Horner, Deputy Hedrick, Deputy Scott Kelsnuner, and Deputy Shirley, there is no evidence they were personally involved making any decisions regarding Bryant's medical care. Instead, the decisions regarding Bryant's medical care were made by Nurse Harmon or Dr. Hale. *See Monell v. New York City Dep't of Soc. Servs.,* 436 U.S. 658, 694, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978)(respondeat superior liability not permissible under § 1983); *Keeper v. King,* 130 F.3d 1309, 1314 (8th Cir. 1997)(no evidence that the defendants were doctors or were personally involved in making medical decisions about treatment); *Mark v. Nix*, 983 F.2d 138, 139-40 (8th Cir. 1993)(section 1983 liability requires some personal involvement or responsibility). There is simply no basis on which the other named Defendants can be held liable. *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535-36 (8th Cir. 1999).

Having found no individual liability exists on the part of any of the Defendants, there is no basis on which Garland County can be held liable. *McCoy v. City of Monticello*, 411 F.3d 920, 922 ("This circuit has consistently recognized a general rule that, in order for municipal liability to attach, individual liability first must be found on an underlying substantive claim."). There is, in any event, no evidence of a custom or policy of Garland County which was the moving force behind any alleged constitutional violation. *See e.g., Bd. of the County Comm'rs v. Brown*, 520 U.S. 397, 403, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997)(Plaintiff must identify a government policy or custom that caused the plaintiff's injury to recover from a government entity under § 1983).

## V. Conclusion

For the reasons stated, I recommend the Defendants' motion for summary judgment (Doc. 22) be granted.

**The parties have ten days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 30th day of July 2008.

/s/ Barry A. Bryant
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE